Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

⚑Sorensen v. CHT Corp.
N.D.Ill.,2004.

United States District Court,N.D. Illinois, Eastern Division.
Kurt SORENSEN, Paul Larson, Sarah Brown, John Winterman, and Belinda Chang on behalf of themselves and all other Plaintiffs similarly situated known and unknown, Plaintiffs,
v.
CHT CORP., a/k/a Charlie Trotters and Charlie Trotter, Defendants.
Beverly KIM on behalf of herself and all other Plaintiffs similarly situated known and unknown, Plaintiff,
v.
CHT CORP., a/k/a Charlie Trotters and Charlie Trotter, Defendants.
**Nos. 03 C 1609, 03 C 7362.**

March 10, 2004.

Douglas M. Werman, Law Office of Douglas M. Werman, Jamie G. Sypulski, Law Offices of Jamie G. Sypulski, Chicago, IL, for Plaintiffs.
Lawrence I. Kipperman, John G. Levi, Darren Ross Reisberg, Jessica Kaye Benenson, Sidley Austin Brown & Wood LLP, Bruce B. Jackson, Anna Coleen Pittman, Anthony J. Madonia & Associates, Ltd., Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

PALLMEYER, J.

*1 Plaintiffs are current and former employees of Defendants CHT Corp., a/k/a Charlie Trotters and Charlie Trotter, the owners of Charlie Trotter's restaurant in Chicago, Illinois. Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.,* the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1*et seq.,* and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1*et seq.,* by failing to pay employees minimum wages and overtime pay as required under these statutes. Plaintiff Paul Larson now seeks to certify a class of similarly situated employees on a claim of unjust enrichment, and Plaintiff Beverly Kim seeks class certification of her IMWL and IWPCA claims. Defendants object to class certification and also seek judgment on the pleadings on the unjust enrichment claim. For the reasons set forth here, Defendants' motion for judgment on the pleadings is granted. Larson's motion for class certification is denied, and Kim's motion is entered and continued.

*BACKGROUND*

These related cases arise out of a compensation scheme in place at Charlie Trotter's restaurant from at least March 1998 until October 2002. Under that plan, Defendants paid waiters and servers ("waiters") $3.09 per hour, plus tips. The waiters were required to turn over their earned tips to Defendants, who then distributed back to the waiters a certain flat "per diem" rate representing "tips." (TAC ¶¶ 5, 6.)[FN1] Although waiters typically collected from $300 to $1,000 in tips per night, Defendants paid them "only a fractional amount of the tips they actually received ... as part of Defendants' tip pooling arrangement."(*Id.* ¶ 8.) Defendants allegedly used the excess tip money to pay the salaries of non-tipped employees, and to fund certain of Defendants' charitable activities. (*Id.* ¶ 9.) Defendants' compensation plan also provided for "back of the house employees" working as cooks and food preparers to receive $5.15 per hour, plus an additional payment termed "other." (Cmplt.¶ 6.)[FN2] Plaintiffs allege that Defendants "excluded the weekly 'other' payment made to [back house employees] in calculating [their] applicable regular hourly rate of pay for overtime purposes."(*Id.* ¶¶ 7, 9.) In addition, Defendants paid overtime wages only for hours worked in excess of 80 in bi-weekly pay periods rather than for hours worked in excess of 40 per week. (*Id.* ¶¶ 10, 11.)

> FN1. The Third Amended Complaint filed by Plaintiff Kurt Sorensen et al. is cited as "TAC ¶ __."
>
> FN2. The Complaint filed by Plaintiff Beverly Kim is cited as "Cmplt. ¶ __."

Plaintiffs believe this scheme violates federal and state law. Specifically, the Fair Labor Standards Act requires that employees be paid not less than the

Case 1:08-cv-00385   Document 13-2   Filed 02/04/2008   Page 2 of 10

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

federally mandated minimum wage (at the time, $5.15 per hour), plus overtime pay at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a work week. 29 U.S.C. §§ 206, 207. Under the Act, an employer may pay tipped employees a cash wage that is less than the minimum wage if the employee also receives "an additional amount on account of the tips received by such employee which amount is equal to the difference between the [cash] wage ... and the [effective minimum] wage."29 U.S.C. § 203(m). An employer may only utilize this so-called "tip credit" arrangement if it notifies employees of such a plan, and if "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."*Id.* Sorensen Litigation

*2 On March 5, 2003, Plaintiff Kurt Sorensen filed a five-count complaint on behalf of himself and other similarly situated waiters, alleging that Defendants willfully violated the FLSA and the Portal-to-Portal Act by unlawfully using a tip credit against their minimum wage obligations, and then failing to pay their waiters minimum wages (Count I) and overtime wages (Count III) as required by the statutes. In Counts II and IV, Sorensen alleged violations of the IMWL's minimum wage and overtime pay requirements, and in Count V, he alleged that Defendants were unjustly enriched by their unlawful compensation arrangement with the waiters. On April 10, 2003, the complaint was amended to add Paul Larson, Sarah Brown, John Winterman, and Belinda Chang as plaintiffs (the "Sorensen Plaintiffs"). Plaintiffs made some additional changes in this First Amended Complaint and in a Second Amended Complaint filed on June 18, 2003.

On August 6, 2003, the Sorensen Plaintiffs filed a Third Amended Complaint ("TAC") which is now the current version before the court. In Count I of the TAC, the Sorensen Plaintiffs allege that Defendants' "tip credit" arrangement described above violates the FLSA and resulted in Plaintiffs being compensated at less than the applicable minimum wage of $5.15 per hour. (TAC ¶¶ 10, 11.)They also allege that Defendants' failure to pay them the minimum wage violates the IMWL (Count II.) In Count III, the Sorensen Plaintiffs allege that they and other tipped employees were entitled to be paid at an overtime rate of $7.72 per hour, i.e., one and one-half times the minimum wage of $5.15 per hour. (TAC ¶ 24.)Defendants instead paid the wait staff an overtime rate of only $5.66 per hour. The Sorensen Plaintiffs also allege that Defendants paid waiters overtime wages for hours worked "in excess of 80 hours in bi-weekly work weeks" rather than for all hours worked in excess of 40 hours per week as required by the FLSA and the Portal-to-Portal Act. (*Id.* ¶ 25.)In Count IV, the Sorensen Plaintiffs assert a similar violation under the IMWL.

In Count V, the Sorensen Plaintiffs allege, in the alternative, that for each week in which they and other waiters worked in excess of 40 hours, Defendants paid them a minimum wage of $3.09 per hour, an overtime rate of $5.66 per hour, and a daily "per diem" or "day rate." According to the Sorensen Plaintiffs, "[t]hese [per diem] payments were fictitious rates of pay which were aggregated each week by Defendants to equate to a fixed bi-weekly salary paid to Plaintiffs and other wait staff."(TAC ¶ 40.)The Sorensen Plaintiffs claim that this plan violates the FLSA and the Portal-to-Portal Act.

Count VI of the TAC alleges that Defendants were unjustly enriched by their practice of requiring the Sorensen Plaintiffs and other waiters to turn over their earned tips, and then paying the employees "substantially less than 50% of the total tips earned by Plaintiffs in each two week pay period" and using the excess tip money to pay non-tipped employees and fund charitable events. (TAC ¶¶ 48, 50.)Larson seeks to represent a class of similarly situated waiters for this claim. Finally, in Count VII of the TAC, the Sorensen Plaintiffs allege a violation of the IWPCA based on Defendants' failure to "compensate Plaintiffs for all hours they worked for Defendants."(*Id.* ¶ 64.)

Kim Litigation

*3 On or about September 9, 2003, Plaintiff Beverly Kim filed a complaint in the Circuit Court of Cook County seeking overtime pay and other earned wages on behalf of herself and other similarly situated "back house" employees working at Charlie Trotter's restaurant as cooks and food preparers. The complaint alleges that from at least August 11, 2000 to October 2002, Defendants paid Kim and other back house employees an hourly rate, typically $5.15, plus an additional payment termed "other." (Cmplt.¶ 6.) Defendants directed these employees to work in excess of 40 hours per week but did not pay them the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00385   Document 13-2   Filed 02/04/2008   Page 3 of 10

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

proper overtime rate of one and one-half times their regular rate of pay. Instead, Defendants "excluded the weekly 'other' payment made to Plaintiff in calculating Plaintiff's and the class' applicable regular hourly rate of pay for overtime purposes" in violation of the IMWL and the FLSA. (*Id.* ¶¶ 7, 9.) In addition, Kim alleges, Defendants failed to pay her and other back house employees all earned overtime wages, and implemented an unlawful practice of paying overtime wages only for hours worked in excess of 80 in bi-weekly pay periods rather than for hours worked in excess of 40 per week. (*Id.* ¶¶ 10, 11.) Kim claims that these practices violate the minimum wage and maximum hour provisions of the IMWL (Count I), and the requirements of the IWPCA (Count II), and she seeks to certify a class of all similarly situated employees on both Counts. The complaint also alleges a violation of the FLSA's overtime pay requirements (Count III).

On October 17, 2003, Defendants timely removed Kim's case to federal court pursuant to 28 U.S.C. § 1331. On October 31, 2003, the case was reassigned to this court pursuant to Local Rule 40.4, and consolidated with Case No. 03 C 1609 filed by the Sorensen Plaintiffs. Defendants oppose class certification by both Larson and Kim and seek judgment on the pleadings on the former's unjust enrichment claim in Count VI of the TAC.

*DISCUSSION*

I. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Gustafson v. Jones,* 117 F.3d 1015, 1017 (7th Cir.1997). A court will grant such a motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir.1998) (internal quotations omitted). In making this determination, the court views the facts in the complaint in the light most favorable to the nonmoving party. *Id.*

Defendants [FN3] argue that they are entitled to judgment on the pleadings on the Sorensen Plaintiffs' unjust enrichment claim because (1) their relationship with Plaintiffs "was clearly governed by contract principles"; (2) they were not "unjustly" enriched by their compensation arrangement; and (3) the FLSA provides a complete and exclusive remedy for the violations alleged. (Def. Mem., at 4, 7, 9.) [FN4]

> FN3. Defendants argue, in a footnote without any citation, that Charlie Trotter is not a proper defendant on the unjust enrichment claim because Plaintiffs deem him an "employer" solely pursuant to the FLSA, and not under common law principles. (Def. Mem., at 2 n. 1.) Absent further development of this argument, the court declines to dismiss Trotter as a defendant in Count VI of the TAC on this basis. "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Kauthar SDN BHD v. Stemberg,* 149 F.3d 659, 668 (7th Cir.1998).

Defendants also dispute Plaintiffs' assertion that all the Sorensen Plaintiffs, and not just Larson, are bringing the unjust enrichment claim. The court agrees that the TAC is inartfully drafted in this regard but, given the early stage of the proceedings, it would not be inappropriate to grant Plaintiffs leave to amend the TAC to reflect more clearly their stated intention. In any event, this distinction does not affect the outcome of Defendants' motion; the court will assume here that all of the Sorensen Plaintiffs seek to recover for unjust enrichment.

> FN4. Defendants CHT Corp., Inc. and Charlie Trotter's Memorandum of Law in Support of their Motion for Judgment on the Pleadings on Count VI of Plaintiffs' Third Amended Complaint is cited as "Def. Mem., at ___."

A. Contractual Relationship

*4 Defendants claim that the Sorensen Plaintiffs cannot pursue an unjust enrichment claim because their relationship with Defendants was governed by contract. It is well-established that "unjust enrichment is not available where an action is based on an alleged contract." *Cohabaco Cigar Co. v. U.S. Tobacco Co.,* No. 98 C 1580, 1999 WL 988805, at *16 (N.D.Ill. Oct.22, 1999). *See also F.H. Prince & Co. v. Towers Fin. Corp.,* 275 Ill.App.3d 792, 804, 211 Ill.Dec. 950, 656 N.E.2d 142 (1st Dist.1995) ("[s]ince the doctrine of unjust enrichment presents

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

an implied or quasi-contract claim, where there is a specific contract which governs the relationship of the parties, the doctrine has no application"). The Sorensen Plaintiffs describe a "compensation arrangement" with Defendants they claim violates the FLSA, the IMWL and the IWPCA: specifically, payment of only $3.09 per hour, an overtime rate of $5.66 per hour, and a daily "per diem" constituting only a small fraction of the waiters' actual earned tips, the remainder of which were used to pay the salaries of non-tipped employees and fund certain charitable activities. The Sorensen Plaintiffs rely on that same compensation arrangement as the basis for their claim of unjust enrichment which, Defendants contend, demonstrates that the parties were operating under a contractual relationship. (Def. Mem., at 5.)

More revealing, in Defendants' view, is the fact that the Sorensen Plaintiffs assert in their IWPCA claim that "Defendants agreed to compensate Plaintiffs for their work at the hourly rate agreed to by the parties."(TAC ¶ 63.)Defendants suggest that the use of the term "agreed" denotes a contractual relationship between the parties. They also note that the IWPCA defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties," 820 ILCS 115/2, and argue that because the Sorensen Plaintiffs did not plead the IWPCA in the alternative, it is clear that they are claiming a contractual relationship with Defendants that precludes recovery under an unjust enrichment theory. (Def. Mem., at 5-6.)

The Sorensen Plaintiffs do not dispute that their compensation arrangement with Defendants is contractual in nature, but they claim that it violated federal wage and hour laws. Such an illegal contract, the Sorensen Plaintiffs argue, is void and unenforceable such that their unjust enrichment claim is eminently viable. (Pl. Resp., at 4-5.) [FN5]*See Ryan v. State of Illinois,* No. 91 C 3725, 1993 WL 147416, at *2 (N.D.Ill. May 3, 1993) ("[i]f void, the Bank's contract with Cosentino would not govern the relationship and the unjust enrichment claim could proceed"); *Podromos v. Poulos,* 202 Ill.App.3d 1024, 1032, 148 Ill.Dec. 345, 560 N.E.2d 942, 949 (1st Dist.1990) (observing that in some circumstances, where a contract is unenforceable, a party may seek relief on a theory of unjust enrichment, provided the party has fully performed and the other party has benefitted as a result).

FN5. Plaintiffs' Response to Defendants' Motion for Judgment on the Pleadings on Count VI of the Third Amended Complaint is cited as "Pl. Resp., at ___."

**\*5** The Sorensen Plaintiffs admit that they failed to expressly plead unjust enrichment as an alternative theory of relief to the IWPCA claim. Significantly, however, they do not incorporate the IWPCA allegations into their unjust enrichment claim. This distinguishes *Samuels v. Old Kent Bank,* No. 96 C 6667, 1997 WL 458434 (N.D.Ill. Aug.1, 1997), cited by Defendants, in which the plaintiffs alleged the existence of a contract for a breach of contract claim and incorporated those allegations into the equitable claim without anywhere asserting that the contract was invalid. *Id.* at *15.Here, the Sorensen Plaintiffs clearly take the position that the tip credit arrangement was illegal, though they failed to expressly allege it as a void contract. The court declines to grant judgment on the pleadings on the basis of a pleading deficiency that may be readily cured.

Defendants insist that they have identified more than a mere pleading deficiency because the Sorensen Plaintiffs cannot claim that the entire compensation arrangement is void just because the tip credit system is invalid. (Def. Reply, at 5-6.) [FN6]As Defendants see it,

FN6. Defendants CHT Corp., Inc. and Charlie Trotter's Reply to Plaintiffs' Response to Defendants' Motion for Judgment on the Pleadings on Count VI of Plaintiffs' Third Amended Complaint is cited as "Def. Reply, at ___."

if an employer agreed to provide its employees with a certain salary level as part of a compensation arrangement for a given period, the employer's improper application of the tip credit under the FLSA during such period certainly would not render the entire compensation arrangement unenforceable so as to absolve the employer of its obligation to provide the agreed salary to employees.

(*Id.*) In support of this argument, Defendants cite *Heder v. City of Two Rivers,* 295 F.3d 777 (7th Cir.2002), in which the court characterized a collective bargaining agreement as valid under state law even though certain provisions violated the FLSA. *Id.* at 782.In this case, however, the tip credit arrangement formed the basis of the entire payment

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00385    Document 13-2    Filed 02/04/2008    Page 5 of 10

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

plan, with Defendants relying on the tip credit to calculate minimum wage and overtime pay rates. Based on the information currently before the court, it is not clear that the Sorensen Plaintiffs could present no set of facts to demonstrate that the entire compensation plan is illegal and void. *See Brunt v. Service Employees Int'l Union,* 284 F.3d 715, 718-19 (7th Cir.2002) ("[a] court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved").

B. FLSA As Exclusive Remedy

At the same time, the Sorensen Plaintiffs concede that their unjust enrichment claim is based on the same factual assertions as their FLSA claims, and that they are not entitled to bring state common law claims that seek relief identical to that under the FLSA. *See, e.g., Cichon v. Exelon Generation Co.,* No. 02 C 3441, 2002 WL 31455986, at *3 (N.D.Ill. Nov.1, 2002) ("Illinois common law does not provide for a retaliatory discharge cause of action where an alternative remedy (specifically that under the FLSA) provides effective deterrence to the complained-of conduct"); *Tombrello v. USX Corp.,* 763 F.Supp. 541, 544 (N.D.Ala.1991) (common law claims for "wrongful refusal to pay" were "nothing more than claims for wages [which] must be brought under the Fair Labor Standards Act ... the exclusive remedy for enforcing these rights"); *Nettles v. Techplan Corp.,* 704 F.Supp. 95, 100 (D.S.C.1988) (claims for unpaid overtime and negligent failure to pay overtime were governed by the FLSA). The Sorensen Plaintiffs nonetheless argue that the remedy they seek for unjust enrichment-i.e., disgorgement of tip income-is not available under the FLSA, which provides only for recovery of their minimum wage entitlement. (Pl. Resp., at 8-9.) *See Davis v. B & S, Inc.,* 38 F.Supp.2d 707, 714 (N.D.Ind.1998) ("an employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips").

**\*6** Defendants respond that in similar circumstances, "courts have not turned to the extraordinary remedy of unjust enrichment to award employees all of the tips collected during the applicable period" but, instead, have awarded employees an amount equal to the minimum wage. (Def. Reply, at 7.) *See, e.g., Davis,* 38 F.Supp.2d at 714;*Wright v. U-Let-Us Skycap Servs., Inc.,* 648 F.Supp. 1216, 1217-18 (D.Colo.1986) (tip agreement requiring plaintiffs to "turn in all monies received in tips and be reimbursed just up to the amount that would equal the minimum wage" was "in blatant contravention of § 203(m) of the FLSA"; plaintiffs recovered back wages, interest, and attorneys' fees). There is no evidence, however, that the plaintiffs in these cases requested such equitable relief.

The court recognizes that the Sorensen Plaintiffs' Individual tip income is high, averaging between $300 and $1,000 per night. (TAC ¶ 8.) Thus, recovery of the difference between the tip credit rate paid ($3.09 per hour) and the applicable minimum wage ($5.15 per hour) arguably would not adequately reimburse the Sorensen Plaintiffs for the amount of tips they turned over to Defendants but never recovered. The FLSA, however, specifically addresses this situation where an employer essentially participates in a tip pooling arrangement by retaining a portion of the money, and provides that the appropriate relief is to deny the employer the use of the tip credit arrangement. *See, e.g., Chung v. New Silver Palace Restaurant, Inc.,* 246 F.Supp.2d 220, 230 (S.D.N.Y.2002) ("Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips"; employers of tipped employees must either "allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage"); *Ayres v. 127 Restaurant Corp.,* 12 F.Supp.2d 305, 308-09 (S.D.N.Y.1998) (where tip pool violated FLSA by allowing general manager to participate, employer had to "disgorge the amount of tip credit deducted from each plaintiff's wages" during the relevant time period). In fact, the tip credit and tip pooling systems are expressly described in, and governed by, the FLSA. 29 U.S.C. § 203(m). Plaintiffs have not cited any cases where courts have allowed an unjust enrichment claim under such circumstances.

The Sorensen Plaintiffs are correct that state law claims are not automatically preempted by the FLSA. None of the cases they cite for this proposition, however, supports their entitlement to the remedy they seek here. In *Paukstis v. Kenwood Golf & Country Club, Inc.,* 241 F.Supp.2d 551 (D.Md.2003), for example, the plaintiff alleged violations of the FLSA's overtime requirements, as well as state law

Case 1:08-cv-00385     Document 13-2     Filed 02/04/2008     Page 6 of 10

Not Reported in F.Supp.2d                                                                                       Page 6
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

claims for negligent failure to comply with the FLSA and negligent supervision of the person responsible for such compliance. *Id.* at 559. Defendants there argued that the negligence claims were merely alternate causes of action because the defendants could not be liable for negligently failing to comply with the FLSA unless they actually violated the Act. *Id.* The court disagreed with that analysis and declined to dismiss the negligence claims, observing that such claims "do not necessarily conflict with the purpose of the FLSA's remedial scheme, at least where a plaintiff seeks identical damages under both federal and state law."*Id.* at 559-60. Here, the Sorensen Plaintiffs highlight the fact that they do not seek the same damages under both federal and state law, so *Paukstis* does not establish that their unjust enrichment claim can property coexist with the FLSA claims.

**\*7***Balducci v. Chesterfield County,* 187 F.3d 628 (Table), 1999 WL 604040 (4th Cir.1999) is also inapposite because the plaintiffs in that case could not establish any minimum wage or maximum hour violations under the FLSA. As a result, "[a]ny dispute between these two parties about the number of hours for which the employees' salary was intended to compensate them is not cognizable under the FLSA, but instead should be pursued under state contract law."*Id.* at \*7. In this case, the Sorensen Plaintiffs must establish a violation of the FLSA in order to pursue their unjust enrichment claim at all.

The court agrees that the Sorensen Plaintiffs have presented evidence that Defendants' tip credit arrangement was unjust in that waiters received only a fraction of their earned tips in violation of the FLSA, and is not persuaded by Defendants' belief that the allegedly "generous compensation package that amounted to roughly $70,000 on an annualized basis" establishes that they were paid fairly for their work as a matter of law. (Def. Mem., at 7.) Nevertheless, the Sorensen Plaintiffs' remedy is found in the FLSA and not the common law of quantum meruit. In *Johnston v. Davis Security, Inc.,* 217 F.Supp.2d 1224, 1227-28 (D.Utah 2002), for example, the plaintiff filed suit for unpaid wages and overtime under the FLSA and also brought ten state common law claims, including one for unjust enrichment. *Id.* at 1226. The court dismissed the state law claims because they were based on the same facts and circumstances as the plaintiff's FLSA claims and, thus, were "barred as merely duplicative" of those claims. *Id.* at 1227-28. In this case, similarly, the Sorensen Plaintiffs concede that their unjust enrichment claim is based on the same factual assertions as their FLSA claims. As a result, the common law claim is preempted by the FLSA and not properly before this court.

II. Class Certification

Having determined that Defendants are entitled to judgment on the pleadings on the Sorensen Plaintiffs' unjust enrichment claim, the court need not address Larson's motion to represent a class of all similarly situated waiters for purposes of that claim. The court thus turns to Plaintiff Kim who, for purposes of her state law IMWL and IWPCA claims, seeks to represent a class of all similarly situated cooks and food preparers who worked at Charlie Trotter's restaurant from at least August 11, 2000 to October 2002.

A. Standards for Rule 23 Class Certification

A court has broad discretion to resolve whether certifying a class is proper under Federal Rule of Civil Procedure 23. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir.1998). In making this determination, the substantive allegations in the complaint are taken as true and, generally, the ultimate merits of the case are not examined. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981); *Hill v. Shell Oil Co.,* No. 98 C 5766, 2002 WL 663583, at \*2 (N.D.Ill. Mar.28, 2002). The court should, however, "make whatever factual and legal inquiries are necessary under Rule 23" before deciding whether a case should proceed as a class action. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir.2001); *Woodard v. Tower Automotive Products Co.,* No. 00 C 50459, 2002 WL 832572, at \*2 (N.D.Ill. May 1, 2002). Plaintiffs bear the burden of demonstrating that their case meets all of the requirements of Rule 23. *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir.2000).

**\*8**Rule 23(a) sets forth four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00385    Document 13-2    Filed 02/04/2008    Page 7 of 10

Not Reported in F.Supp.2d                                                                                                Page 7
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

representation).See *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992). If a plaintiff meets all of these prerequisites, she must next satisfy one of the requirements set forth in Rule 23(b).*Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). In this case, Kim seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."Fed.R.Civ.P. 23(b)(3).[FN7]

> [FN7]. Kim's motion for class certification, which was initially filed in state court pursuant to 735 ILCS 5/2-801, does not expressly state which prong of Rule 23(b) is the basis for class certification in federal court. In her reply memorandum, however, she proceeds with an analysis under Rule 23(b)(3).

B. Kim's Motion for Class Certification

In responding to Kim's motion for class certification, Defendants do not dispute that Kim's IMWL and IWPCA claims satisfy the requirements of commonality, typicality, and adequate representation. They argue, instead, that the class is not so numerous as to make joinder impracticable, and that a class action is not a superior method of adjudication. The court addresses each argument in turn.

1. Numeroslty

> Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."See *Williams,* 204 F.3d at 760. There is no "magic number" for numerosity, but "permissive joinder is usually deemed impracticable where the class members number 40 or more."*Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302, 307 (N.D.Ill.1995). Courts have observed, however, that a "relatively small group may form a class if other considerations make joinder impracticable."*Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D.Ill.1996) (quoting *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988)). These other considerations include judicial economy, the ability of class members to initiate individual suits,

geographic dispersement of the potential class members, the type of relief sought by the class, and the practicability of relitigating a common core of issues. See *Radmanovich v. Combined Ins. Co. of America,* 216 F.R.D. 424, 431 (N.D.Ill.2003); *Patrykus,* 121 F.R.D. at 360-61;*Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986).

The putative class in Kim's case consists of at least 50 members. (Def. Resp., at 4.)[FN8] This number easily satisfies the numerosity requirement, and courts have certified classes with far fewer members. *See, e.g., Rosario v. Cook County,* 101 F.R.D. 659, 661 (N.D.Ill.1983) (class of 20 sufficiently numerous); *Bamer v. City of Harvey,* No. 95 C 3316, 1997 WL 139469, at *3 (N.D.Ill. Mar.25, 1997) (class of 13 sufficiently numerous). Defendants argue, however, that numbers notwithstanding, joinder is not in fact impracticable here because all of the potential class members can join this case pursuant to the FLSA's opt-in procedures under 29 U.S.C. § 216(b). (Def. Resp., at 5.) In Defendants' view, "class certification-with its attendant class notices, opt-out issues, fairness hearings and all other Rule 23 requirements-would expend *more* judicial resources than maintaining this action as one in which potential class members can opt-in if they so choose."(*Id.* at 6.)

> [FN8]. Defendants' CHT Corp., Inc.'s, a/k/a Charlie Trotter, and Charlie Trotter's Response to Plaintiff's Motion for Class Certification is cited as "Def. Resp., at ___."

**\*9** In *Thiebes v. Wal-Mart Stores, Inc.,* No. CIV. 98-802-KI, 2002 WL 479840 (D.Or. Jan.9, 2002), for example, the plaintiffs alleged claims under the FLSA and Oregon state wage laws. *Id.* at *1. The court granted the plaintiffs' motion to proceed as an FLSA collective action and 425 individuals, representing 2.7% of the potential class members, opted-in. *Id.* at *1, 3. The plaintiffs also sought to certify a Rule 23 class for their state law claims, but the court found that joinder was not impracticable. The court expressed concern that "certification of the proposed class would bring in many more employees than those who believe they were actually aggrieved by Wal-Mart's alleged conduct."*Id.* at *3. Defendants here speculate that as in *Thiebes,* only a small percentage of the potential class members would opt-into an FLSA action, so joinder of a Rule 23 class on the state law claims would not be impracticable. (Def. Resp., at 5.*)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00385    Document 13-2    Filed 02/04/2008    Page 8 of 10

Not Reported in F.Supp.2d                                                                                                       Page 8
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

Kim responds that she has not pleaded a collective action under the FLSA and therefore has no right to invoke the Act's opt-in procedures. (Kim Reply, at 5.) [FN9] She also contends that few persons are likely to opt-into a lawsuit that may jeopardize their careers, citing *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261 (D.Conn.2002). In *Scott,* the plaintiffs sought to certify their state labor claims in a class action. The court certified a collective action under the FLSA and 21 of the 281 potential class members opted-into the lawsuit. *Id.* at 266.The defendant argued that joinder of the 21 individuals was not impracticable and that it was "highly unlikely that an individual who elects not to opt-into the FLSA collective action but fails to opt-out of the Rule 23 class is actually making a conscious decision to participate in the law suit only on the state law claims."*Id.* at 267 (citing *Muecke v. A-Reliable Auto Parts and Wreckers, Inc.,* No. 01 C 2361, 2002 WL 1359411 (N.D.Ill. June 21, 2002)). The court disagreed and found the potential class sufficiently numerous, particularly because there was evidence that potential class members failed to join the FLSA action "because they feared reprisal." *Id.*

> FN9. Plaintiff's Reply in Support of her Motion for Class Certification of Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act Claims is cited as "Kim Reply, at ___."

In this court's view, neither *Thiebes* nor *Scott* is directly on point for purposes of a numerosity determination. Unlike in *Thiebes,* there is no FLSA collective action pending in which many potential class members chose not to opt-in; thus, there is no evidence that certifying a class for the state law claims would bring in more individuals than actually feel aggrieved. *See Hickey v. Great Western Mortgage Corp.,* 158 F.R.D. 603, 609 (N.D.Ill.1994) ("the court is not required to deny certification for speculative reasons; the certification decision always remains within the sound discretion of the court"). For similar reasons, the court is not persuaded that numerosity exists merely because many individuals may feel aggrieved but fear retaliation if they join Kim's lawsuit. In any event, as noted, there are currently 50 identified class members available to participate in this lawsuit which, at this time, is more than adequate to meet the numerosity requirement of Rule 23(a)(1).[FN10]

> FN10. Defendants suggest in a footnote that joinder is "wholly practicable" because the putative class members are likely concentrated in the Chicago area. (Def. Resp., at 5 n. 1.) It is true that geographic dispersement of the potential class members is one factor to consider in determining whether to certify a relatively small class (assuming this is an appropriate characterization of a class of at least 50 members). Other considerations, however, include judicial economy, the ability of class members to initiate individual suits, the type of relief sought by the class, and the practicability of relitigating a common core of issues. *See Radmanovich,* 216 F.R.D. at 431;*Patrykus,* 121 F.R.D. at 360-61;*Riordan,* 113 F.R.D. at 62. Thus, the location of the potential class members is not dispositive on the issue of numerosity. *See Diehl v. Twin Disc, Inc.,* No. 94 C 50031, 1995 WL 330637, at *3 (N.D.Ill. May 30, 1995) (where the proposed class included approximately 120 members, the court found the numerosity requirement of Rule 23(a) satisfied despite "no evidence of geographic dispersion").

2. Superiority

**\*10** Defendants make a similar argument against class certification with respect to Rule 23(b)(3)'s superiority requirement. They assert that an FLSA collective action, and not a Rule 23 class action, is the superior method of adjudicating Kim's claims. "While a class action may or may not be an 'appropriate method' here, it is clearly not superior to the Congressionally-designed, mandated and encouraged collective action under Section 216(b) of the FLSA."(Def. Resp., at 7.) Defendants cite several cases in support of this proposition.

In *De La Fuente v. FPM Ipsen Heat Treating, Inc.,* No. 02 C 50188, 2002 WL 31819226 (N.D.Ill.Dec.16, 2002) (Reinhard, J.), the plaintiffs moved to begin opt-in notice on their FLSA collective action and simultaneously sought class certification of their IMWL and IWPCA claims. *Id.* at \*1. The defendants did not object to the FLSA collective action and the court granted the plaintiffs' motion to proceed with notice of the class members' opt-in rights. *Id.* The court, however, declined to certify a Rule 23 class until after the opt-in period on

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00385   Document 13-2   Filed 02/04/2008   Page 9 of 10

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

the FLSA action closed. "The court shares *Thiebes [v. Wal-Mart Stores, Inc.,* No. 98-802-KI, 1999 WL 1081357 (D.Or. Dec.1, 1999)* ] concern about a notice that both calls for a decision whether to opt-in to the collective action and also whether to opt-out of the class action."2002 WL 31819226, at *2. The court stated that it would have a better idea whether joinder was impractical after the opt-in period closed. *Id.*

The plaintiffs in *Muecke v. A-Reliable Auto Parts and Wreckers, Inc.,* similarly filed suit under the FLSA, the IMWL, and the IWPCA, and sought to send collective action opt-in notices under the FLSA claim and to certify a class under Rule 23 for the state law claims. 2002 WL 1359411, at *1 (Kennelly, J.) The court agreed to let the plaintiffs proceed with an FLSA collective action but declined to certify a Rule 23 class until after the opt-in period closed, at which time "we will have before the Court as plaintiffs all of the present and former employees who wish to pursue a claim for unpaid wages."*Id.* at *2. The court noted the possibility that only a few employees would opt-into the FLSA action, and explained that it would be incongruous to have "an FLSA 'class' including only a tiny number of employees who are interested in seeking back wages, with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees."*Id.* The court concluded that a Rule 23 class action was not a superior means of resolving the state law claims and declined to "impose on the collective FLSA claim an overlay of a Rule 23(b)(3) state-law class."*Id.*

In *Rodriguez v. The Texan, Inc.,* No. 01 C 1478, 2001 WL 1829490 (N.D.Ill. Mar.7, 2001) (Shadur, J.), the plaintiff attempted to represent a class of similarly situated persons under the FLSA, the IMWL, and the IWPCA. The court issued an opinion *sua sponte* notifying the plaintiff that the FLSA did not permit Rule 23 class certification, instead requiring the use of an opt-in procedure. *Id.* at *1-2. The court then explained that the plaintiff would have "an uphill burden" to obtain class certification of the state law claims:

*11 There are powerful policy considerations that led Congress to change the original version of the Fair Labor Standards Act by enacting the Portal to Portal Act of 1947 so as to require the opt-in procedure via individualized written consents by employees wishing to join such actions ... That policy and the underlying congressional intent would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.

*Id.* at *1 (internal citations omitted). The court noted that the rules regarding supplemental jurisdiction under 28 U.S.C. § 1367(a) support this view. Section 1367(a), which gives federal courts jurisdiction over state law claims that are sufficiently related to the federal claims, provides that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."That language, the court stated, "plainly betokens actual joinder or intervention, not the type of representative treatment that is sought by Rodriguez and his counsel here instead of such actual joinder."*Id.* at *4.

As noted, Kim has not pleaded and does not seek to pursue an FLSA collective action. For this reason, she argues the cases cited by Defendants are inapposite. (Kim Reply, at 10-11.) In any event, she points out, other courts in this district have allowed class certification of state law wage claims notwithstanding a pending FLSA claim. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00 C 5755, 2000 WL 1774091 (N.D.Ill.Dec.1, 2000) (after removal from state court, court certified a class under the IMWL and IWPCA despite the availability of a class action for FLSA claims, observing that potential confusion could be eliminated by appropriately-drafted notice); *O'Brien v. Encotech Constr. Servs., Inc.,* 203 F.R.D. 346 (N.D.Ill.2001) (following *Ladegaard,* court permitted plaintiffs to proceed both with FLSA collective action and a Rule 23 class action on their IMWL and IWPCA claims, as the possibility of separate claims in state court would be inefficient, and notice need not be unduly confusing to class members).

Neither party disputes that Kim's sole avenue for representing a class under the FLSA is the opt-in procedure set forth in § 216(b). They disagree, however, whether Kim is required to pursue an FLSA collective action-an issue that has not been addressed in the courts-and, if so, whether class certification on her state law claims remains viable. Kim argues that she is the "master" of her complaint and cannot be forced to plead an FLSA collective action. (Kim Reply, at 7-8.) Defendants insist that Kim cannot avoid the FLSA's exclusive class mechanism by "strategically modif[ying] h[er] pleading technique" to exclude such a claim.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00385     Document 13-2     Filed 02/04/2008     Page 10 of 10

Not Reported in F.Supp.2d                                                                                     Page 10
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

In the Portal-to-Portal Act, Congress sought to "limit collective actions by requiring that each employee give written consent to becoming a party."*Rochlin v. Cincinnati Ins. Co.,* No. IP00-1898CHK, 2003 WL 21852341, at *15 n. 6 (S.D.Ind. July 8, 2003). Allowing plaintiffs to avoid the FLSA's opt-in procedure simply by omitting a request for collective action and seeking class certification of state law wage claims would arguably subvert this congressional intent. *See Rodriguez,* 2001 WL 182940, at *1. At the same time, the court recognizes that Illinois courts contemplate class action treatment for IMWL and IWPCA claims. *See, e.g., Gelb v. Air Con Refrigeration and Heating, Inc.,* 326 Ill.App.3d 809, 260 Ill.Dec. 421, 761 N.E.2d 265 (1st Dist.2001). Thus, permitting Defendants to remove Kim's state law claims to this court and object to class action treatment of those claims arguably subverts the rights of unnamed class members. As noted, Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."An FLSA collective action is certainly available to Kim, but the running of the statute of limitations with respect to all other class members may render it unavailing for them. *See*29 U.S.C. § 256 (for an individual not named in a complaint, his or her FLSA action is commenced on the date he or she consents to be a party plaintiff). Defendants do not object to allowing Kim to amend her complaint to allege an FLSA collective action, but have not offered to toll the statute of limitations as of the date Kim first filed her complaint in state court. The court therefore is not prepared to assume that the FLSA collective action is a superior method of adjudication. Further, because Kim has not sought inclusion of other back house workers in her FLSA claim, denial of this motion for class certification may effectively dispose of the rights of persons whose interests Kim purports to protect.

**\*12** The court recognizes its own obligation to consider the interests of absent class members and is for this reason reluctant to deny Kim's motion for class certification. At the same time, the court is reluctant to grant such a motion, where the result would be that a single individual's FLSA claim is the only basis for the court's jurisdiction over a potentially large class of claimants under a state law theory. The court is therefore inclined to revisit the issue of removal and consider whether the state law claims should be remanded under 28 U.S.C. § 1367(c). In *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301 (3d Cir.2003), where FLSA claims were brought together with fair wage claims under state law, the court observed that "the disparity in numbers of similarly situated plaintiffs [alleging state as opposed to federal claims] may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog."*Id. at 311.*The *De Asencio* court reversed the district judge's exercise of supplemental jurisdiction over the state wage claims, albeit noting also the presence of unresolved state law issues. *See also Jackson v. City of San Antonio,* 220 F.R.D. 55.2003 WL 23180857 (W.D.Tex. Dec. 3, 2003) (declining to exercise supplemental jurisdiction over state law claims of pendent plaintiffs who failed to opt-in to collective FLSA claim).

The court therefore will continue Kim's motion for further briefing. The parties are directed to brief the issue of whether, in light of Kim's decision not to seek collective action treatment of the FLSA claims, and her obligation to unnamed class members, the court should sever Kim's state law class claims and remand them to state court.

*CONCLUSION*

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings on Count VI of Plaintiffs' Third Amended Complaint (43-1) is granted. Plaintiff Larson's Motion for Class Certification on that Count VI (24-1) is denied as moot, and Plaintiff Kim's Motion for Class Certification is entered and continued for further briefing.

N.D.Ill.,2004.
Sorensen v. CHT Corp.
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.