# Exhibit 3

LEXSEE 2000 U.S. DIST. LEXIS 17832

**SEAN LADEGAARD, individually and on behalf of a class of employees, similarly situated, Plaintiff, v. HARD ROCK CONCRETE CUTTERS, INC., et al., Defendants.**

**No. 00 C 5755**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2000 U.S. Dist. LEXIS 17832; 142 Lab. Cas. (CCH) P34,179*

**November 30, 2000, Decided
December 1, 2000, Docketed**

**DISPOSITION:**  [*1] Plaintiff's motion for class certification granted.

**COUNSEL:** For SEAN LADEGAARD, plaintiff: Jac A. Cotiguala, Luanne M. Galovich, Law Offices of Jac A. Cotiguala, Chicago, IL.

For HARD ROCK CONCRETE CUTTERS, INC., JAMES M DVORATCHEK, PETER M HELD, defendants: Gary S. Kaplan, Noah A. Finkel, Seyfarth Shaw, Chicago, IL.

**JUDGES:** Joan H. Lefkow, United States District Judge.

**OPINION BY:** Joan H. Lefkow

**OPINION**

**MEMORANDUM OPMEMAND ORDER**

Plaintiff, Sean Ladegaard ("Ladegaard"), filed this putative class action against defendants Hard Rock Concrete Cutters, Inc. ("Hard Rock"), and its principals, James M. Dvoratchek and Peter M. Held, in the Circuit Court of Cook County, Illinois, alleging violations of the Illinois Minimum Wage Law ("IMWL"), *820 ILCS 105/1 et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), *820 ILCS 115/1 et seq.*, and the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 201 et seq.* After defendants removed the case to federal court, plaintiff filed this motion for class certification of the state law

claims. [1] For the following reasons, plaintiff Ladegaard's motion for class certification is granted.

> 1   Plaintiff's motion for class certification only specifically mentions the Illinois Minimum Wage Act claim. However, plaintiff's complaint and reply brief suggest that he is requesting class certification for both the IMWL and IWPCA state law claims. The court has evaluated the motion as applying to both claims.

[*2] **PROCEDURAL BACKGROUND**

Plaintiff is a former employee of defendant Hard Rock, an Illinois corporation. He seeks certification of a class of former and current employees who have worked for Hard Rock during the period August 1, 1997 to the present and who were not paid for hours worked and overtime compensation. The complaint and motion for class certification were filed August 15, 2000. On September 18, 2000, defendants removed the case to federal court. On September 25, defendants filed their answer and affirmative defenses.

Plaintiff renewed his motion for class certification in federal court on September 27, 2000, and a few days later, on October 3, he moved for immediate certification of the class and to restrain defendants' communications with class members, as well as to begin notice to members of the plaintiff class on the FLSA claims. The motion for immediate certification asserted that defendants had provided every member of the proposed class who is currently working for Hard Rock with a

2000 U.S. Dist. LEXIS 17832, *2; 142 Lab. Cas. (CCH) P34,179

release which they could exchange for a check and which, plaintiff asserts, carried the threat that they would no longer be working with the company if they did not sign. [2] At a [*3] hearing on October 5, the court resolved the emergency motions by the following agreement: "Pending disposition of the motion for class certification, defendants represent on the record that they will not contact potential class members with respect to any matter relating to this suit."

> 2   Plaintiff's reply to defendants' response to plaintiff's motion for class certification notes that because defendants had not yet responded to discovery the means Hard Rock used to obtain the releases is unknown.

On October 16, 2000, defendants filed their consolidated response to plaintiff's motions for class certification; immediate certification of class and to restrain defendants' communications with class members; and to begin notice to members of the plaintiff class [hereafter "Def.'s Consol. Response"]. The defendants attached a copy of an example of a release, which purported to release the FLSA, IMWL and IWPCA claims (but no other claims against the company). The attached release had redacted the name of the employee [*4] and sum that the employee would receive (within 14 days of signing the release). It was signed by the employee on September 27, 2000 and by the company on September 28, 2000.

## STANDARDS

"The Federal Rules of Civil Procedure ("the Rules") provide the federal district courts with 'broad discretion' to determine whether certification of a class-action lawsuit is appropriate." *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). Under the Rules, a determination of class certification requires a two-step analysis. First, the named plaintiff must demonstrate that his action satisfies the four threshold requirements of *Rule 23(a)*:

> (1) numerosity (the class must be so large 'that joinder of all members is impracticable'); (2) commonality (there must exist 'questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (the representative must be able to 'fairly and adequately protect

the interests of the class').

*Id. at 594*; *Fed. R. Civ. P. 23(a)*. Failure to establish any one of these prerequisites precludes class certification. [*5] *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Additionally, the action must "qualify under one of the three subsections of *Rule 23(b)*." *Hardin v. Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993); *Fed. R. Civ. P. 23(b)*. In this case, plaintiff seeks certification under subsections 23(b)(2) and (b)(3). *Rule 23(b)(2)* provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Rule 23(b)(3)* provides that an action may be maintained as a class action if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. [3] When evaluating a motion for class certification, the court accepts as true the allegations made in support of certification, and does not examine the merits [*6] of the case. *Hardin, 814 F. Supp. at 706*, citing, *inter alia, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53, 40 L. Ed. 2d 732 (1974)*. The party seeking class certification bears the burden of showing that the requirements for class certification have been met. *Id.*, citing, *inter alia, General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)*.

> 3   The effect of *Rule 23(b)(2)* certification as opposed to *Rule 23(b)(3)* certification is that under 23(b)(3) the court is required to inform the members of the right to opt-out, whereas under 23(b)(2) it is not. *Compare Fed. R. Civ. P. 23(c)(2)* and *23(c)(3)*.

## DISCUSSION

As set out above, plaintiff asks this court to certify a class of former and current employees who have worked for Hard Rock during the period August 1, 1997 to the present and who were not paid for hours worked, including overtime compensation. Specifically, [*7] plaintiff alleges that from August 1, 1997 to the present, plaintiff and the class he seeks to represent have not been

2000 U.S. Dist. LEXIS 17832, *7; 142 Lab. Cas. (CCH) P34,179

paid for time loading and unloading trucks and driving to the work site at the beginning of the work day, time spent driving from the job site back to the yard and loading and unloading equipment at the end of the work day, and time spent attending mandatory monthly safety meetings, as required by law.

First, defendants object to plaintiff's motion on the ground that it was brought under the Illinois Rules of Civil Procedure as opposed to the federal Rules. Plaintiff admits that his renewed motion (which was originally brought in Illinois state court) relied on Illinois procedure but asserts that the Illinois requirements for class certification are similar to the four prerequisites of *Rule 23(a)*. The court agrees that plaintiff's motion for class certification should have been brought under the federal Rules. Nevertheless, this defect is not fatal because, when taken together, the allegations in the complaint, the motion for class certification, and plaintiff's reply memorandum adequately address the requirements for class certification under the federal Rules. It [*8] would be a waste of time to require plaintiff to file a slightly different motion seeking the same relief.

A. The Requirements of *Rule 23(a)*

Next, defendants argue that plaintiff's motion does not meet the requirements of *Rule 23*. Concerning the *Rule 23(a)* requirements, defendants' main objection is that plaintiff has failed to establish the numerosity requirement of *Rule 23(a)(1)*. Defendants also make tangential arguments regarding the other 23(a) requirements. The court finds that plaintiff has satisfied his burden under *Rule 23(a)*.

1. Numerosity -- *Rule 23(a)(1)*

To meet the numerosity requirement, the class must be so large "that joinder of all members is impracticable." *Keele, 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(1)*. Plaintiff asserts that the class of driver-operators and helpers that he seeks to represent is so numerous that joinder of all members is impracticable. Plaintiff estimates that the class has at least 50 members, judging from the number of trucks Hard Rock has, and defendants state that "according to Defendants' records there are a total of 60 individuals who have been employed by Hard Rock as driver-operators or helpers since August 15, 1997." [*9] In order to establish numerosity, plaintiff need not allege the exact number of members of the proposed class. *Johnson v. Rohr-Ville Motors, Inc., 189*

*F.R.D. 363, 368 (N.D. Ill. 1999)*. Generally, where the membership of the proposed class is at least 40, as is likely the case here, joinder is impracticable and the numerosity requirement is met. *Id.*, citing *Swanson v. American Consumer Indus., Inc., 415 F.2d 1326, 1333 (7th Cir. 1969)*.

Defendants argue that the class size should be eleven because "all but eleven signed agreements releasing their claims." *See* Def.'s Consol. Response, at 7. Because the propriety of a class action is basically a procedural question, it is inappropriate at the class certification stage to resolve issues such as the validity of releases, which go to the merits of the case. *See, e.g., Dubin v. E.F. Hutton Group Inc., 1990 U.S. Dist. LEXIS 9003, at *10, No. 88 CIV. 0876 (PKL), 1990 WL 105757, at *4 n.4 (S.D.N.Y. July 20, 1990)* ("On the present record, the Court is unable to determine the effect, if any, of these alleged releases on the numerosity of the putative class. Furthermore, it is inappropriate for the Court to resolve [*10] this substantive issue at this time."); *Fraley v. Williams Ford Tractor and Equip. Co., 339 Ark. 322, 5 S.W.3d 423, 431 (Ark. 1999)* (citing, *inter alia*, treatises and federal cases, and reversing determination that numerosity requirement had not been met where many putative class members had signed releases because the determination of the validity of the releases prematurely intruded on the merits of case). While the court is aware of authority in which courts have denied certification or reduced the class size where a significant portion of the potential class had signed releases, [4] the instant case is distinguishable in that defendants' method of obtaining the releases may have intruded on the court's authority to oversee the notice to class members in the class certification process in a fair manner. [5] In such a case, it is even more imperative that a court not consider the releases at the certification stage. *Fraley, 5 S.W.3d at 437; see also* 1 NEWBERG ON CLASS ACTIONS, § 15.19 (3d ed. 1992) [hereafter "NEWBERG"] ("Though the law has long favored settlements, releases from liability or exclusions from a class obtained by the defendant [*11] through misrepresentations or the coercive threat of economic sanctions will not receive judicial approval when challenged.").

4    *See, e.g., Melong v. Micronesian Claims Comm'n, 207 U.S. App. D.C. 15, 643 F.2d 10, 14 (D.C. Cir. 1980)* (denying on grounds of typicality and adequacy of representation); *Casper v. Cunard Line, Ltd., 560 F. Supp. 240,*

Case 1:08-cv-00385    Document 17-4    Filed 02/28/2008    Page 5 of 9

Page 4

2000 U.S. Dist. LEXIS 17832, *11; 142 Lab. Cas. (CCH) P34,179

*243 (E.D. Pa. 1983)* (evaluating numerosity excluding released plaintiffs); *but see Korn v. Franchard Corp., 456 F.2d 1206, 1212 (2d Cir. 1972); Meyer v. Stevenson, Bishop, McCredie, Inc., 1976 U.S. Dist. LEXIS 15159, No. 74 Civ. 5274, 1976 WL 7888, at *3 (S.D.N.Y. May 11, 1976)* (suggested conditionally granting class status and if the releases are determined to be valid, the court could entertain a motion to decertify the class for failure to satisfy the requirement of numerosity).

5    The court cannot determine on the record before it how many or even if releases were signed by potential class members. Notably, the one release provided by the defendants was dated September 27, 2000, the day plaintiff filed its motion for class certification in this court.

[*12] Defendants also attempt to narrow the class by asserting that the potential class should be divided into two sub-classes: 41 "driver-operators" who claim to be owed compensation for travel time to and from the yard and for time spent attending safety meetings and the remaining 19 who worked only as "helpers" and who claim compensation only for time spent attending safety meetings. Plaintiff disputes this characterization claiming that helpers also are entitled to travel pay to and from the yard. For purposes of this motion, the court takes plaintiff's allegations as true, and therefore, rejects defendants' attempt to reduce the class in this manner.

Finally, defendants argue that even if the proposed class size is 60, the court should evaluate other factors and determine that in light of these factors the class size is not so numerous that joinder is impracticable. Where the class size is relatively small, courts do consider other factors such as judicial economy by avoiding a multiplicity of actions, the size of individual claims, the financial resources of class members, the ability of the claimants to bring individual lawsuits and geographic dispersement. *See* NEWBERG, § 3.06; [*13] *Gaspar v. Linvatec Corp., 167 F.R.D. 51, 56 (N.D. Ill. 1996)* (citing cases where classes as small as 13 to 20 are certified). However, the consideration of other factors is usually necessary only where the proposed class size is smaller than 40. *Rohr-Ville Motors, Inc., 189 F.R.D. at 368; Wood River Area Devel. Corp. v. Germania Fed. Savings and Loan Assoc., 198 Ill. App. 3d 445, 450-52, 555 N.E.2d 1150, 1153-54, 144 Ill. Dec. 631 (Ill. App. Ct. 1990)* (if a class has more than 40 people numerosity is

satisfied and if between 25 and 40 other factors become relevant). Even considering such factors, however, the court would conclude that joinder is impracticable here. Defendants do not dispute that the proposed class members have limited financial resources to bring individual actions and that their claims will likely be small. *See* NEWBERG, at § 3.06 (noting that "permissive joinder presupposes 'a group of economically powerful parties who are obviously able and willing to take care of their own interests.'"). The possibility of retaliation is also a factor when considering whether joinder is impracticable, *see id.; Rodriguez v. Berrybrook Farms, Inc., 672 F. Supp. 1009, 1014 (W.D. Mich. 1987)*, [*14] and plaintiff has asserted that current employees may feel inhibited to sue making joinder unlikely. Although there is only plaintiff's suggestion of intimidation in this instance, the nature of the economic dependency involved in the employment relationship is inherently inhibiting. Further, the court does not agree with defendants' assertion that the availability of the FLSA action cures these problems.

2. Commonality -- *Rule 23(a)(2)*

To meet the commonality requirement, "there must exist 'questions of law or fact common to the class.'" *Keele, 149 F.3d at 594;* Fed. R. Civ. Pro. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of *Rule 23(a)(2)*." *Id.* (quotation omitted). A common nucleus of operative fact exists where "defendants have engaged in standardized conduct towards members of the proposed class." *Id.* "The commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 185 (N.D. Ill. 1992)*. Immaterial factual differences among the class member's claims "will not defeat a class action." *See id.* [*15] Although there will be differences in the details of class members' claims, the essence of them all will be the alleged unlawful failure of Hard Rock to pay for certain categories of work performed during a particular period of time. The commonality requirement is satisfied.

3. Typicality -- *Rule 23(a)(3)*

To meet the typicality requirement, the named plaintiff's claims or defenses must be "typical . . . of the class." *Keele, 149 F.3d at 594;* Fed. R. Civ. Pro. 23(a)(3). The typicality requirement, although closely related to the commonality question, focuses on the class

2000 U.S. Dist. LEXIS 17832, *15; 142 Lab. Cas. (CCH) P34,179

representative. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.; De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983).* "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar, 167 F.R.D. at 57.* The presence of defenses against some class members and not others does not defeat typicality. *Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996)* [*16] ("NutraSweet's defense based on the releases went too far. Typicality under *Rule 23(a)(3)* should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."). Plaintiff's and the class members' claims arise out of the same allegedly unlawful conduct -- defendants' failure to pay wages for hours worked and overtime rates. Indeed, plaintiff's specific claims are as broad as the claims that he is asserting on behalf of the class. He states:

> plaintiff and the class represents [sic] were not paid for all hours worked in that they were not paid for unloading and loading truck in the morning and for the first hour spent driving to the first job site at the beginning of their work day and also they were not paid for the first hour of driving the truck back to the yard at the end of their shift from the job site to the yard and the unloading and loading of the equipment and supplies at the yard and were not paid for attendance at monthly mandatory safety meetings.

Complaint, P 7. Thus, the typicality requirement is satisfied. [6]

> 6    Defendants indirectly argue that because the named plaintiff, Ladegaard, is a former employee, his request for relief is not typical of the purported class, which includes current employees. Defendants cite to no case law in support of this proposition. This argument goes to Ladegaard's standing to raise the claims in the complaint, which the court addresses under the adequacy of representation requirement, below.

[*17]  4. Adequacy of Representation -- *Rule 23(a)(4)*

To meet the adequacy of representation requirement, "the representative must be able to 'fairly and adequately protect the interests of the class.'" *Keele, 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(4).* Under *Rule 23(a)(4)*, the adequacy of representation determination "is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n, 7 F.3d at 598* (quotation omitted). Defendants do not contest the adequacy of plaintiff's counsel. Plaintiff asserts that his counsel, Jac Cotiguala and Luanne Galovich, are experienced and recognized in wage and hour law and have been designated as class counsel in other class actions in state and federal court and he cites to these cases. The fact that attorneys have been found adequate in other cases is "is persuasive evidence that they will be adequate again." *Gomez v. Illinois State Bd. of Ed., 117 F.R.D. 394, 401 (N.D. Ill. 1987).* Plaintiff also notes that Mr. Cotiguala has handled cases under the IMWL and [*18] is current Chair of the National Employment Lawyers Association Wage and Hour Committee and past Chair of the CBA Labor and Employment Committee.

As to the second factor, the class representative must not have "antagonistic or conflicting claims" with the members of the purported class. *Gammon v. GC Servs. Ltd. Partnership, 162 F.R.D. 313, 317 (N.D. Ill. 1995), citing Rosario v. Livaditis, 963 F.2d 1013 (7th Cir. 1992).* Plaintiff is qualified to represent the class "only if his 'interest in proving his claim[s] will lead him to prove the claims of the remainder of his class.'" *Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago, 121 F.R.D. 664, 670 (N.D. Ill. 1988)* (quotation omitted). Plaintiff asserts that he will fairly and adequately protect the interests of the class because he was a driver-operator employed by defendants and worked with helpers on a frequent basis. Further, he asserts that as a former employee he is owed a substantial amount of money in overtime wages and has an incentive to request back wages.

Defendants argue, without citation to any authority, that because plaintiff does not currently [*19] work for defendant he has no standing to seek injunctive or declaratory relief and thus cannot fairly and adequately protect the interests of the class under *Rule 23(a)(4)*, See Def.'s Consol. Response, at 4 n.1. Defendants' contention is, in essence, an argument that because Ladegaard is a former employee his claims conflict with the claims of

2000 U.S. Dist. LEXIS 17832, *19; 142 Lab. Cas. (CCH) P34,179

current employees. This argument lacks merit. While a named plaintiff "who is unable to secure standing for himself is certainly not in a position to 'fairly insure the adequate representation' of those alleged to be similarly situated," *Mintz v. Mathers Fund, Inc., 463 F.2d 495, 499 (7th Cir. 1972)*, to have standing to sue, the named representative "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele, 149 F.3d at 592-93*. The court finds that Ladegaard, the named plaintiff, possesses the same interest and has suffered the same injury as the other class proposed class members, whether former or current. He alleges he was deprived of wages for hours worked and for overtime and he requests a declaration, an accounting and back pay to remedy this. [*20] He alleges the same violation and remedy for the rest of the class. [7] *See Becher v. Long Island Lighting Co., 164 F.R.D. 144, 152 (E.D.N.Y. 1994)* ("All participants seek the same 'make-whole' relief claimed by the named plaintiffs . . . . Accordingly, . . . this Court finds the distinction between active and retired employees insufficient to bar certification."). The adequacy of representation requirement is satisfied.

   [7]    Plaintiff does note that injunctive relief is possible under the IMWL, at least, and the title of his complaint includes injunctive relief as part of the relief sought. However, plaintiff does not identify the injunctive relief requested. Presumably, any injunctive relief would rest on a finding of unlawful failure to pay one or more types of wages sought and would require merely future obedience to the law in those respects. Although Ladegaard, as the named plaintiff, would not benefit from injunctive relief of that sort, he has no disincentive to ask for it on behalf of the class, and counsel for the class, as well, is undoubtedly cognizant of plaintiff's responsibility to adequately represent the class with respect to injunctive relief.

[*21] B. Requirements of *Rule 23(b)*

   Plaintiff seeks certification under both 23(b)(2) and 23(b)(3). Defendants argue that 23(b)(2) is not applicable and that plaintiff's motion fails to meet the requirement of 23(b)(3).

   1. *Rule 23(b)(2)*

   *Rule 23(b)(2)* provides that an action may be

maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Rule 23(b)(2)* is generally "invoked in cases where injunctive or declaratory relief is the primary or exclusive relief sought." *Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 322, 335 (N.D. Ill. 1995); Doe v. Guardian Life Ins. Co. of America, 145 F.R.D. 466, 477 (N.D. Ill. 1992)* ("the primary limitation on the use of *Rule 23 (b)(2)* is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members"). Moreover, "the declaratory judgment sought must correspond to injunctive relief, or serve as the basis for future injunctive relief." *Roman v. Korson, 152 F.R.D. 101, 111 (W.D. Mich. 1993)*; [*22] NEWBERG, at § 4.11 (same). Although the title of plaintiff's complaint indicates that he seeks injunctive relief, the complaint itself does not identify the injunctive relief he seeks. [8] The court agrees with defendants' complaint that plaintiff primarily requests a monetary remedy for himself and the class, back pay, and that the declaratory judgment requested would, if granted in plaintiff's favor, serve as a basis for a monetary award and the injunctive relief, if any, would be essentially a corollary to the principal relief obtained. *See Gaspar, 167 F.R.D. at 59* (finding 23(b)(2) not applicable because request for benefits under retirement and severance plans "would be in the form of monetary relief, rather than the injunctive or declaratory relief required by *Rule 23(b)(2)*"). While 23(b)(2) certification has been granted where damages would flow from declaratory relief, [9] the court finds that another compelling reason not to certify plaintiff's class under 23(b)(2) in the instant case, is that the FLSA claim and the state law claims overlap. Because the potential class members have to opt in to the former suit, it is more consistent to permit them the opportunity [*23] to opt out of the state claims, an option not automatically provided under the notice rules for 23(b)(2). Therefore, the court finds that *Rule 23(b)(2)* is inapplicable for certification of this class action.

   [8]    In Count I, the Illinois Overtime Wage Payment, plaintiff requests: "a judgment for all back wages due," "prejudgment interest on the back wages," "punitive damages of 2% per months on the underpayments," "reasonable attorney's fees and costs of this action," "that the court determine the rights of the parties and direct

Page 7

2000 U.S. Dist. LEXIS 17832, *23; 142 Lab. Cas. (CCH) P34,179

the defendants to account for all hours worked and wages paid to the class members during the temporality of the class," and "such other and further relief as the Court may deem just and equitable." Complaint, PP A-E. In Count II, the Illinois Wage Payment and Collection Act, plaintiff requests "the court order defendants to make an accounting of all hours worked and wages paid to the plaintiff and to each and every class member he represents for the period August 1, 1997 to the present," "judgment in favor of the plaintiff and the class he represents . . . for back wages due, plus prejudgment interest at the statutory rate" and "such other and further relief as may be just in law and equity." Complaint, PP A-C.

[*24]

9   *See Gammon, 162 F.R.D. at 321* (reasoning that 23(b)(2) certification was appropriate because plaintiff requested declaratory relief under the Fair Debt Collection Act and such relief was appropriate to settle the issue of the legality of defendant's behavior with respect to the entire class and if plaintiff prevailed on the issue of liability, statutory damages would flow directly from the declaratory judgment and damages would be readily calculable on a classwide basis).

## 2. *Rule 23(b)(3)*

*Rule 23(b)(3)* provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### a. Predominance of Common Questions

Defendants do not contend that predominance is not satisfied. In any event, the court already found with respect to commonality under *Rule 23(a)(2)* and typicality under *Rule 23(a)(3)* that questions of fact and law common to plaintiff's proposed [*25] class exist, and that plaintiff's and the other class members' claims arose from the same course of conduct of the defendants. Although 23(b)(3) requires a more searching inquiry as to whether the common questions predominate over any questions affecting only individual members, the court concludes that the questions of defendants' liability for back wages and overtime predominates over any

individualized questions of defenses or damages. *See Gaspar, 167 F.R.D. at 60.*

### b. Superiority of Class Action Method

Defendants contend that because of the availability of the FLSA collective action claim, the class action would not be a superior method of resolving the controversy. Defendants assert that the FLSA provides relief similar to the state claims and that it would be confusing for the class members to receive notice from the court about their choices to "opt-in" to the FLSA action and "opt-out" of the state actions under *Rule 23(b)(3).*

In determining whether a class action is superior to other methods for resolving a controversy, pertinent findings include

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate [*26] actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*See Fed. R. Civ. P. 23(b)(3).* In evaluating these factors, the court finds that a class action is a superior method of adjudicating the state claims. The court has not been informed by either party of any pending suits brought by individual class members, other than plaintiff's. Thus, there does not appear to be an interest of individual members in controlling the prosecution of the state claims. The fact that the named plaintiff has instituted a federal claim -- the FLSA action -- does not alter this conclusion. The presence of both FLSA and state claims has not prevented courts from certifying the state claims under *Rule 23(b). See Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351, 354 (S.D.N.Y. 1999)* (granting authorization to pursue collective action for FLSA claims and class certification under *Rule 23(b)(3)* for New York Minimum [*27] Wage Act claims finding that under 23(b)(3) "a class action is superior to other methods for the fair and efficient adjudication of the claims in question"); *see also Ramirez v. Nutrasweet Co., 1996*

2000 U.S. Dist. LEXIS 17832, *27; 142 Lab. Cas. (CCH) P34,179

Page 8

*U.S. Dist. LEXIS 13462, 1996 WL 529413*, at *3 (granting class certification under 23(b)(3) for common law breach of contract claims where plaintiff had also brought FLSA claims); *Leyva v. Buley, 125 F.R.D. 512, 514 (E.D. Wash. 1989)* (granting class certification to agricultural workers on state wage and contract law claims where plaintiffs had also sued for wage violations under the FLSA). Moreover, even with the presence of the FLSA action, individual plaintiffs could bring an action in state court on the state claims. To avoid this result, and to further judicial economy, it is desirable to concentrate the litigation in one forum. Finally, there are not likely to be great difficulties in the management of this class action. The class is a manageable size and plaintiff will likely not have problems contacting the potential members. Although defendants have suggested confusion will result from notice to class members of their right to "opt-in" to the FLSA action and "opt-out" of the *Rule 23* state claims, [*28] plaintiff has indicated that this will not be a major obstacle because his attorneys have drafted such joint notices (supervised by other courts in this district) in the past. Further, any issues specific to individual members, such as damages (*see* Def.'s Consol. Response, at 6 n.3) or defenses, can be determined through a separate motion or hearing.

## CONCLUSION

Because plaintiff has satisfied the necessary elements of *Rule 23(a)* and *Rule 23(b)(3)*, he may bring his action as a class action. The court defines the class as former and current driver-operators and helpers who have not been paid for wages and overtime for time loading and unloading trucks and driving to the work site at the beginning of the work day, time spent driving from the job site back to the yard and loading and unloading equipment at the end of the work day, and time spent attending mandatory monthly safety meetings for the period of August 15, 1997 to the present. [10]

> 10    Although plaintiff has used the August 1, 1997 date as the beginning date for the temporality of the class, both parties appear to agree that the pertinent time of the class begins three years prior to the date that suit was filed. Because the specific filing date is August 15, 2000, the court adopts August 15, 1997 as the beginning date of the class period.

[*29] ENTER:

Joan H. Lefkow

United States District Judge

Dated: November 30, 2000